**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALICIA WOODFORD, Individually, and on Behalf of Others Similarly Situated | : <br> : <br> : |
| Plaintiff, | : |
| v. | : Case No. 1:22-cv-03665-BAH |
| YAZAM INC., d/b/a EMPOWER | : |
| Defendant. | : |

**FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**
**(Violations of the Consumer Protection Procedures Act)**

Plaintiff, Alicia Woodford, individually and on behalf of all others similarly situated, through her attorneys, Patrick M. Regan, Christopher J. Regan, Emily C. Lagan, and the law office of Regan Zambri Long PLLC, respectfully demands judgment against Defendant, Yazam Inc. d/b/a Empower, on the grounds and in the amount set forth below:

**INTRODUCTION**

1. A new ridesharing company, doing business under the trade name "Empower," markets itself to District of Columbia consumers as a cheaper alternative to Uber and Lyft; however, it turns out Empower achieves that cheapness by violating the District's consumer-safety laws, including specifically the ones mandating that rideshare companies perform background checks of drivers and maintain $1 million of insurance coverage to protect passengers (and other innocent road users or bystanders) in the event of a crash.

2. Through its actions, Defendant Empower not only fraudulently misleads its passenger-consumers; it also exposes them, other road users, and even its own drivers to the risk of financial ruin in the event of a crash.

3. Plaintiff brings this class action to recover for the injuries and damages she and all others similarly situated suffered as a result of an Empower driver's negligence and because Defendant Empower's actions violate the District of Columbia Consumer Protection Procedures Act ("CPPA").

## JURISDICTION AND VENUE

4. Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and an amount in controversy which exceeds $75,000.  This Court also has subject matter jurisdiction pursuant to the provisions of 28 U.S.C. § 1332(d), as the amount in controversy exceeds the value of $5,000,000.00, this is a class action, and one or more Plaintiffs is a citizen of a state different from the state of citizenship of Defendant.

5. This Court has personal jurisdiction over Defendants pursuant to FED. R. CIV. P. 4(k)(1) and D.C. CODE § 13-423(a)(1)-(4).

6. Venue is proper in this Court pursuant to the provisions of 28 U.S.C. § 1391(b)(2), as acts and/or omissions alleged in this Complaint occurred in the District of Columbia. Moreover, the Defendant is found, resides, or transacts business in the District of Columbia.

## PARTIES

7. Plaintiff, Alicia Woodford, is an adult resident of the District of Columbia.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

8. Upon information and belief, Defendant Yazam Inc. d/b/a Empower ("Empower"), is a Delaware corporation with its headquarters in the Commonwealth of Virginia.

## FACTS COMMON TO ALL COUNTS

### Empower: Pitched to Consumers as "Uber/Lyft, only Cheaper"

9. Empower is a rideshare service that dispatches drivers to customers on demand through a cell phone application, or "app," in certain markets within the United States.

10. Upon information and belief, Defendant Empower has operated within the District of Columbia since at least June 1, 2020, the date on which it registered with the Department of Consumer and Regulatory Affairs.

11. The Empower app is free to download and install on a smartphone.

12. On its website,[1] Empower pitches itself to consumers explicitly as a "rideshare" company, an alternative to Uber and Lyft:

---

[1] https://driveempower.com/ (last accessed 10/26/2022).

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030



13. Defendant Empower sets the default fares that its passengers will be charged for rides booked through its app; Empower Drivers must take affirmative steps to modify them.

14. Defendant Empower collects and distributes the fares for rides booked through its app.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

15. Defendant Empower sets cancellation charges for rides booked through its app and does not permit either Drivers or Riders to negotiate over such fares.

16. Through its app, Defendant Empower provides GPS navigation to its Drivers and its Drivers are expected to follow the GPS to the ride destination.

17. Defendant Empower monitors driver performance through a Rider feedback and ranking system.

18. Defendant Empower requires that Drivers respond to Riders' ride requests within a timeframe that is acceptable to Defendant Empower.

19. Defendant Empower further boasts that it is better than Uber and Lyft for both Drivers and Riders, and at a reliably lower price point[2]:

### Better for Drivers

At Empower, we treat drivers like customers, because they are. Drivers set their own rates and get 100% of the fare. They have access to their own dedicated local customer support team and are provided with the information and tools they need to take control of their financial future.

### Better for Riders

Riders using Empower pay 20% less on average compared to Uber or Lyft. Riders also can request a driver they feel safe with by limiting ride requests to favorite or same gender drivers.

Get $10+ in free rides when you sign up!

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[2] https://driveempower.com/ (last accessed 10/26/2022).

20. The promotional screenshots posted by Defendant Empower in the Google Play and Apple app stores trumpet the same message:



21. Prospective Riders can download the app, set up an account, and order rides without ever being told terms of service exist, let alone being directed to read them.

22. In the process of downloading the app, setting up an account, and ordering rides, Prospective Riders are never informed of <u>how</u> Defendant Empower delivers what it represents to be the same service at such a discounted price.

**THE SECRET REVEALED (Part I): Defendant Empower Intentionally Chooses
Not to Carry Insurance Required by Law to Protect Consumers**

23. For the protection of its citizen-consumers, District of Columbia law requires (in relevant part) that rideshare companies such as Defendant Empower either (1) procure a primary automobile liability insurance policy that provides coverage of at least $1 million per occurrence to protect passenger-consumers when they are riding in

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

the vehicle or (2) explicitly verify that its drivers themselves maintain the required coverage. D.C. CODE § 50-301.29c.

24. If the rideshare company chooses option (2), it is forbidden to allow the driver to drive passengers unless and until the rideshare company has verified that the driver actually maintains the required coverage; if the driver's coverage lapses at any point, then the rideshare company itself must provide the required coverage. D.C. CODE § 50-301.29c.

25. Regardless of which option a rideshare company chooses, "[t]he insurance requirements set forth in [D.C. Code § 50-301.29c] shall be disclosed on a private vehicle-for-hire company's website, and the company's terms of service shall not contradict or be used to evade the insurance requirements of this section." D.C. CODE § 50-301.29c(h)

26. As of August 6, 2022, Defendant Empower did not provide its DC Drivers with a primary automobile liability insurance policy that provides coverage of at least $1 million per occurrence for their work as Empower drivers.

27. As of August 6, 2022, Defendant Empower did not provide its DC Drivers any automobile insurance at all for their work as Empower drivers.

28. As of August 6, 2022, Defendant Empower did not require its DC Drivers to maintain a primary automobile liability insurance policy that provides coverage of at least $1 million per occurrence.

29. As of August 6, 2022, Defendant Empower did not require its DC Drivers to maintain any automobile insurance at all for their work as Empower drivers.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

30. As of August 6, 2022, Defendant Empower did not verify whether its DC Drivers maintained any automobile insurance <u>at all</u> for their work as Empower drivers.

31. As of August 6, 2022, Defendant Empower did not maintain records of whether each of its DC Drivers maintained automobile insurance for their work as Empower drivers and in what amounts.

32. As of August 6, 2022, Defendant Empower did not disclose on its website the insurance requirements set forth in D.C. Code § 50-301.29c.

33. As of the time of this filing, Defendant Empower still does not provide for its DC Drivers a primary automobile liability insurance policy that provides coverage of at least $1 million per occurrence for their work as Empower drivers.

34. As of the time of this filing, Defendant Empower still does not provide for its DC Drivers any automobile insurance <u>at all</u> for their work as Empower drivers.

35. As of the time of this filing, Defendant Empower still does not require its DC Drivers to maintain a primary automobile liability insurance policy that provides coverage of at least $1 million per occurrence.

36. As of the time of this filing, Defendant Empower still does not require its DC Drivers to maintain any automobile insurance <u>at all</u> for their work as Empower drivers.

37. As of the time of this filing, Defendant Empower still does not verify whether its DC Drivers maintain any automobile insurance <u>at all</u> for their work as Empower drivers.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

38. As of the time of this filing, Defendant Empower still does not maintain records of whether each of its DC Drivers maintains automobile insurance for their work as Empower drivers and in what amounts.

39. At the time of this filing, Defendant Empower still does not disclose on its website the insurance requirements set forth in D.C. Code § 50-301.29c.

40. At the time of this filing, Defendant Empower's terms of service both contradict and evade the insurance requirements set forth in D.C. Code § 50-301.29c.

41. For the full time it has operated in the District of Columbia, Defendant Empower has put its drivers on the road with knowing indifference to whether or not they were covered by any insurance for their work as Empower drivers, let alone the amounts required of rideshare companies and drivers under District of Columbia law, recklessly endangering not only its own passengers (District of Columbia consumers), but also the other motorists, cyclists, pedestrians, and everyone else who must share the road with Defendant Empower's Drivers.

42. In the entire time Defendant Empower has operated in the District of Columbia, consumers were never informed (even after downloading the app, setting up an account, and ordering rides) that one way in which Defendant Empower delivers cheaper rides is by consciously violating the District of Columbia's insurance requirements for rideshare companies.

43. Even now, consumers are still never informed that one way in which Defendant Empower delivers cheaper rides is by consciously violating the District of Columbia's insurance requirements for rideshare companies.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

44.     Even the most curious, internet-savvy, and diligent consumer would be hard-pressed to find any insurance information on Defendant Empower's website—were one to navigate to the FAQs page, scroll down into the "Drivers" section (as opposed to the "Riders" section), all one would find is the following cryptic statement:

> **Does Empower provide insurance?**
>
> Empower does not currently provide insurance to drivers; however, we are working on establishing relationships with insurance carriers to help provide drivers with the most affordable options. If you do not feel that your existing coverage will properly cover you, we suggest that you purchase additional coverage.
>
> Using Empower, drivers keep 100% of the fare. With Uber and Lyft, drivers get 60% on average. Many drivers are making thousands of dollars more per month. With increased earnings, drivers can now afford to run their own businesses, and we are working hard to provide additional services to assist you.

45.     With the FAQ response above, Defendant Empower knowingly misleads its own would-be Drivers, too—Defendant Empower knows full well that under virtually no circumstances will the "existing coverage" possessed by its would-be Drivers through their personal automobile insurance policies provide coverage while the insured is working as a rideshare driver. Rather than advise its would-be Drivers of that fact, it misleads them, too, attempting to dump on them the responsibility to research District of Columbia insurance law on the subject.

46.     Defendant Empower's chicanery has not, however, gone unnoticed by rideshare industry insiders; one such observer concluded as follows: "**The red flags here**

**are too much to overcome for me** when it comes to insurance but Empower clearly suggests for drivers to carry their own rideshare or commercial insurance."[3]

47. By choosing, in violation of District of Columbia law, not to obtain the required insurance coverage, not to require its Drivers to obtain the required insurance coverage, not to disclose the insurance requirements on its website, and to remain willfully blind as to whether or not its Drivers are in fact carrying <u>any</u> insurance coverage, Defendant Empower not only fraudulently misleads its passenger-consumers; it also exposes them, other road users, and even its own drivers to the risk of financial ruin in the event of a crash.

### THE SECRET REVEALED (Part II): Just for Good Measure, Not Background Checks, Either

48. For the protection of citizen-consumers, before a rideshare company ever dispatches a driver to consumers, District of Columbia law also requires that rideshare companies such as Defendant Empower retain an accredited third-party to conduct a background check on that driver, including specifically "(1) A local and national criminal background check; (2) The national sex offender database background check; and (3) A full driving record check." D.C. CODE §§ 50-301.29b(b); 50-301.29a(6).

49. Should a background check reveal certain prior offenses (for example, certain enumerated violent and/or sex crimes) for a given driver, that driver must be

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[3] https://therideshareguy.com/empower-rideshare/ (last accessed 10/26/2022) (emphasis in original).

rejected and permanently disqualified from working as a rideshare driver in the District of Columbia. D.C. CODE § 50-301.29b(c).

50. As of August 6, 2022, Defendant Empower did not perform on all its Drivers the background checks required by D.C. CODE § 50-301.29b(b).

51. As of August 6, 2022, Defendant Empower did not perform on any of its Drivers the background checks required by D.C. CODE § 50-301.29b(b).

52. As of the time of this filing, Defendant Empower still does not perform on all its Drivers the background checks required by D.C. CODE § 50-301.29b(b).

53. As of the time of this filing, Defendant Empower still does not perform on any of its Drivers the background checks required by D.C. CODE § 50-301.29b(b).

**FACTS SPECIFIC TO THE NAMED PLAINTIFF**

54. On August 6, 2022, Ms. Woodford used the Empower app to request a ride.

55. Defendant Empower dispatched Empower Driver William Arrey to pick up Ms. Woodford and transport her as requested.

56. At approximately 1:20 p.m., Mr. Arrey was driving on South Dakota Avenue, NE, with Ms. Woodford seated in the back seat of his vehicle.

57. As Mr. Arrey approached the intersection of South Dakota Avenue and Riggs Road, NE, he attempted to make a left turn onto Riggs Road.

58. Traffic on Riggs Road is two-way, with a concrete median in the center dividing the two directions of travel.

59. Instead of staying in his lane as he made the left turn onto Riggs Road, Mr. Arrey collided with the concrete median.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 12 -

60. The force of the collision propelled Mr. Arrey's car up and over the concrete median and knocked Ms. Woodford about the interior of the vehicle.

61. As a result of the crash, Ms. Woodford suffered injuries to her neck and back; and has suffered and continues to suffer extreme physical and emotional pain, suffering, and anguish, as well as other damages.

62. At the time of the crash, Defendant Empower did not maintain a primary automobile liability insurance policy that provided coverage of at least $1 million per occurrence that covered Mr. Arrey when he was working as an Empower Driver.

63. At the time of the crash, Mr. Arrey did not himself maintain a primary automobile liability insurance policy that provided coverage of at least $1 million per occurrence that covered Mr. Arrey when he was working as an Empower Driver.

## CLASS ACTION ALLEGATIONS

64. Plaintiff seeks to bring this case on behalf of herself and all other passenger-consumers who have taken rides through the Empower app in the District of Columbia. This case is maintainable as a class action under FED. R. CIV. P. 23(b)(1) and (3).

65. The class shall be defined as all Empower passenger-consumers who through the Empower app have booked and taken rides beginning or ending in the District of Columbia during the time Empower has operated here.

66. The proposed class is so numerous that joinder of all members is impractical. Upon information and belief, Defendant Empower employs thousands of drivers who provide rides through the Empower app in the District of Columbia. Upon

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 13 -

further information and belief, tens of thousands passenger-consumers have taken rides through the Empower app in the District of Columbia.

67. Defendant Empower's choices not to abide by District of Columbia law was common to all passenger-consumers described in ¶ 67, because Defendant Empower (1) chose not to maintain a primary automobile insurance policy that provides coverage of at least $1 million per occurrence that covered its drivers when they were dispatched to drive passenger-consumers for Empower; (2) chose not to ensure that Empower drivers possessed coverage of at least $1 million per occurrence that covered them when they were dispatched to drive passenger-consumers for Empower; (3) chose not to disclose the insurance requirements set forth in D.C. Code § 50-301.29c on its website; and (4) chose not to retain an accredited third-party to conduct a background check on Empower drivers prior to approving them to accept rides through the Empower platform.  Accordingly, Defendant Empower's violations of D.C. Code to the detriment of Plaintiff is typical and representative of the violations suffered by all past or present passenger-consumers of Defendant Empower.

68. Plaintiff can, and will, adequately represent the interests of the class because Plaintiff is similarly situated with, and has suffered similar injuries as, the members of the class she seeks to represent. Plaintiff has no interests that conflict with or are antagonistic to the interests of the entire class. Plaintiff has retained Patrick M. Regan, Christopher J. Regan, and Emily C. Lagan of Regan Zambri Long PLLC, who are competent to represent the class and will vigorously prosecute this litigation.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

69. In accordance with FED. R. CIV. P. 23(b)(1) and (3), this class action is superior to any other available method for the fair and efficient adjudication of the controversy because:

   a. Common questions of law and fact predominate over any individual questions that may arise, because all claims involve Defendant Empower's choices not to (1) maintain a primary automobile insurance policy that provides coverage of at least $1 million per occurrence that covered its drivers when they were dispatched to drive passenger-consumers for Empower; (2) ensure that Empower drivers possessed coverage of at least $1 million per occurrence that covered them when they were dispatched to drive passenger-consumers for Empower; (3) disclose the insurance requirements set forth in D.C. Code § 50-301.29c on its website; and (4) retain an accredited third-party to conduct a background check on Empower drivers prior to approving them to accept rides through the Empower platform.

   b. No member of the class has a substantial interest in individually controlling the prosecution of a separate action.

   c. Upon information and belief, there are no pending lawsuits concerning this controversy.

   d. It is desirable to concentrate the litigation of these claims in this forum since the acts complained of took place in the District of Columbia and this forum is convenient to the parties, the class members, and potential witnesses. The resolution of the claims of all class members in a single forum, and in a single proceeding, would be fair and efficient means of resolving the issues raised in this litigation.

   e. The prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, and adjudications with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of the other members not party to the adjudications or substantially impair or impede their ability to protect their interests.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

f.  This class is specifically identifiable to facilitate provision of adequate notice and there will be no significant problems managing this case as a class action.

g.  Resolution of class members' claims in this single class action is superior to resolution of this controversy through the filing of a host of individual actions as a matter of efficiency, consistency and in that it removes economic and other barriers to class members pursuing their claims. Absent this class action, class members will not likely obtain redress of their injuries and Defendant Empower would retain the proceeds of its knowing and intentional violations of the laws of the District of Columbia.

## COUNT I
**(Violations of D.C. Consumer Protection Procedures Act)**

70. Plaintiff incorporates by reference the foregoing paragraphs.

71. The purposes of the District of Columbia Consumer Protection Procedures Act ("CPPA") are to "(a) assure that a just mechanism exists to remedy all improper trade practices and deter the continuing use of such practices; (b) promote, through effective enforcement, fair business practices throughout the community; and (c) educate consumers to demand high standards and seek proper redress of grievances." D.C. CODE § 28-3901.

72. Under the CPPA, it is unlawful "to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including to":

(a) "represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have." D.C. CODE § 28-3904(a).

(b) "represent that a person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have." D.C. CODE § 28-3904(b).

  (e) "misrepresent as to a material fact which has a tendency to mislead." D.C. Code § 28-3904(e).

  (f) "fail to state a material fact if such failure tends to mislead." D.C. Code § 28-3904(f).

  (f-1) "use innuendo or ambiguity as to a material fact, which has a tendency to mislead." D.C. Code § 28-3904(f-1).

  (h) "advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered." D.C. Code § 28-3904(h).

  (j) "make false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions, or the price in comparison to price of competitors or one's own price at a past or future time." D.C. Code § 28-3904(j).

73. By representing to District of Columbia consumers that it is a rideshare company, similar to Uber and Lyft, authorized to operate in the District of Columbia, Defendant Empower misleads consumers, including Ms. Woodford, to believe that Defendant Empower is in compliance with the District of Columbia's consumer-protection rideshare laws, including those requiring driver background checks and adequate insurance to protect consumers, in violation of D.C. CODE §§ 28-3904(a), (b), (e), (f), (f-1), and/or (h).

74. By representing to District of Columbia consumers that it can provide rideshare rides more cheaply than Uber of Lyft (*see supra* ¶ 20), but not explaining that it does so by violating its legal duties (1) to provide the insurance required under District of Columbia law and (2) to conduct the required background checks of its Drivers, Defendant Empower misleads consumers, including Ms. Woodford, concerning the reason for its price in comparison to its competitors' prices, in violation of D.C. CODE §§ 28-3904(j).

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

75. The CPPA protects consumers not only from the unlawful trade practices specifically enumerated in D.C. CODE § 28–3904, but also from practices prohibited by other statutes and the common law.

76. For purposes of passenger-consumer protection, D.C. CODE § 50-301.29c(h) requires as follows of rideshare companies: "The insurance requirements set forth in this section shall be disclosed on a private vehicle-for-hire company's website, and the company's terms of service shall not contradict or be used to evade the insurance requirements of this section."

77. In violation of D.C. CODE § 50-301.29c(h) and the CPPA, Defendant Empower does not disclose the insurance requirements set forth in that section.

78. In violation of D.C. CODE § 50-301.29c(h) and the CPPA, Defendant Empower's entire business model (including specifically the company's terms of service) appears to have been designed to evade the insurance requirements set forth in that section.

79. For purposes of passenger-consumer protection, D.C. CODE §§ 50-301.29c(a),(b), and (d) require (in relevant part) that rideshare companies such as Defendant Empower either (1) procure a primary automobile liability insurance policy that provides coverage of at least $1 million per occurrence to protect passenger-consumers when they are riding in the vehicle or (2) explicitly verify that its drivers themselves maintain the required coverage; if the rideshare company chooses option (2), it is forbidden to dispatch the driver to drive passengers unless and until the rideshare company has verified that the driver actually maintains the required coverage; if the

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 18 -

driver's coverage lapses at any point, then the rideshare company itself must provide the required coverage.  D.C. CODE § 50-301.29c.

80. By choosing not to (1) provide the insurance required by D.C. CODE § 50-301.29c(a) or (2) verify that Empower Drivers maintained the required insurance coverage; Defendant Empower violated the D.C. CODE § 50-301.29c and the CPPA.

81. For the protection of its citizen-consumers, before a rideshare company ever dispatches a driver to consumers, District of Columbia law requires that rideshare companies such as Defendant Empower retain an accredited third-party to conduct a background check on that driver, including specifically "(1) A local and national criminal background check; (2) The national sex offender database background check; and (3) A full driving record check." D.C. CODE §§ 50-301.29b(b); 50-301.29a(6).

82. In violation of D.C. CODE § 50-301.29b, D.C. CODE § 50-301.29a, and the CPPA, Defendant Empower does not conduct of all its Drivers the background checks required by that section.

WHEREFORE, pursuant to the District of Columbia Consumer Protection Procedures Act, Plaintiff, on behalf of herself and all others similarly situated, demands the following remedies:

   a. $1,500 per ride booked in violation of the District of Columbia Consumer Protection Procedures Act, payable to each consumer;

   b. Reasonable attorney's fees and costs;

   c. Punitive damages in the amount of $25,000,000 or ten percent (10%) of the net value of Defendant Empower, whichever is higher; and

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 19 -

   d. An injunction against Defendant Empower's continuing use of its unlawful trade practices in the District of Columbia, including specifically its holding itself out to consumers as a rideshare company while simultaneously choosing to violate the consumer-safety laws applicable to rideshare companies, such as those requiring proper insurance coverage, the performance of driver background checks, and all other violations revealed through discovery.

   e. Restoration to each consumer of all money acquired through the unlawful trade practices (*i.e.*, fares); and

   f. Any other relief the Court deems proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury with respect to each claim in this Complaint.

Respectfully submitted,

REGAN ZAMBRI LONG PLLC

By: /s/ *Christopher J. Regan*
Patrick M. Regan           #336107
pregan@reganfirm.com
Christopher J. Regan       #1018148
cregan@reganfirm.com
Emily C. Lagan             #1645159
elagan@reganfirm.com
1919 M Street, NW, Suite 350
Washington, DC  20036
Ph: (202) 463-3030
Fx: (202) 463-0667
*Counsel for Plaintiff*