### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALICIA WOODFORD, individually, and on behalf of others similarly situated, | |
| Plaintiff, | Civil Action No. 22-3665 (BAH) |
| v. | Judge Beryl A. Howell |
| YAZAM INC., d/b/a EMPOWER, | |
| Defendant. | |

## MEMORANDUM OPINION

Plaintiff Alicia Woodford is an unhappy customer.  On August 6, 2022, she used the cell phone application of defendant Yazam Inc. (doing business as "Empower") to hail a driver in the District of Columbia and, while seated in the back seat of the driver's vehicle, she sustained injuries when the driver collided with a concrete median when making a left turn.  In this putative class action, plaintiff seeks relief from defendant, under the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. CODE § 28-3901 *et seq.*, for defendant's alleged misrepresentations regarding its compliance with the D.C. consumer protection rideshare law requiring a certain level of insurance coverage and driver background checks, and for defendant's alleged violation of these two rideshare law requirements.

Defendant now moves to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim.  *See* Def.'s Mot. Dismiss ("Def.'s Mot."), ECF No. 20; *see also* Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem."), ECF No. 20-1.  For the reasons below, plaintiff's Amended Complaint is dismissed for lack of subject matter jurisdiction.

## I.      BACKGROUND

The relevant statutory, factual, and procedural background necessary to resolving defendant's instant motion to dismiss is summarized below.

### A.      Relevant District of Columbia Statutes

The CPPA prohibits engagement in "an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby," D.C. CODE § 28-3904, with further explication by listing a variety of unlawful trade practices and by enumerating other statutes, the "violat[ion] [of] any provision" of which constitutes an unlawful trade practice, *id.* § 28-3904(y)–(ll).  More specifically, as relevant here because they are cited in plaintiff's complaint, CPPA's subsections (a) and (b) proscribe persons from representing that the goods, services, or persons, have certain qualities that they do not possess, *id.* § 28-3904(a), (b); subsections (e), (f), and (f-1) prohibit making representations or omissions as to "a material fact" when those representations or omissions have "a tendency to mislead," *id.* § 28-3904(e), (f), (f-1); subsection (h) bars advertising or offering goods or services "without the intent to sell them or without the intent to sell them as advertised or offered," *id.* § 28-3904(h); subsection (j) prohibits making false or misleading representations of fact concerning "price reductions" or "the price in comparison to price of competitors or one's own price at a past or future time," *id.* § 28-3904(j); and, finally, subsection (k) provides a private cause of action for "relief from the use of a trade practice in violation of a law of the District," *id.* § 28-3905(k)(1)(A).

A separate D.C. law, not among those laws enumerated as covered by the CPPA, *see generally* D.C. Code § 28-3904(y)–(ll), is the Vehicle-for-Hire Innovation Amendment Act of 2014 ("VHIAA"), D.C. Law, 20-197 (2014) (codified at D.C. CODE § 50-301 *et seq.*).  The VHIAA regulates any "[p]rivate vehicle-for-hire company," which is defined as "an organization . . .

2

operating in the District that uses digital dispatch to connect passengers to a network of private vehicle-for-hire operators." D.C. CODE § 50-301.03(16B). The VHIAA further defines a "[p]rivate vehicle-for-hire operator" as "an individual who operates a personal motor vehicle to provide private vehicle-for-hire service in contract with a private vehicle-for-hire company." *Id.* § 50-301.03(16C).

Private vehicle-for-hire companies, as defined under the VHIAA, must be licensed and must comply with several regulatory requirements, three of which are relevant here. First, private vehicle-for-hire companies must "maintain," or ensure their drivers maintain, "a primary automobile liability insurance policy that provides coverage of at least $1 million per occurrence for accidents involving a private vehicle-for-hire operator at all times when the operator is engaged in a prearranged ride." *Id.* § 50-301.29c(a), (b), (d). Second, "[t]he insurance requirements set forth in [D.C. CODE § 50-301.29c] shall be disclosed on a private vehicle for-hire company's website, and the company's terms of service shall not contradict or be used to evade the insurance requirements of this section." *Id.* § 50-301.29c(h). Third, before approving a driver's application to provide rides on behalf of the company, and every three years thereafter, private vehicle-for-hire companies must have an accredited third-party conduct certain background checks, including specifically "(1) A local and national criminal background check; (2) The national sex offender database background check; and (3) A full driving record check," and must permanently disqualify applicants whose background checks reveal that drivers had been convicted of certain offenses within the prior 7 years, had been convicted of "driving with a suspended or revoked license" within the prior 3 years, or are matches in the national sex offender registry database. *Id.* §§ 50-301.29b(b), 50-301.29b(c); 50-301.29a(6).

D.C. regulations "pertaining to public and private vehicles-for-hire" are enforced by the District's Department of For-Hire Vehicles (DFHV).  *Id.* § 50-301.07(b-1).

### B.    Factual Background

The Amended Complaint describes defendant as "a rideshare service that dispatches drivers to customers on demand through a cell phone application, or 'app,' in certain markets within the United States," including in the District, where defendant has operated since at least June 1, 2020.  Am. Compl. ¶¶ 9–10, ECF No. 17.  In its operations, defendant sets the "default fares that its passengers will be charged for rides booked through its app[,]" though drivers using the app may modify those fares.  *Id.* ¶ 13.  In addition, defendant "collects and distributes the fares for rides booked through its app[,]" sets cancellation charges, "monitors driver performance through a Rider feedback and ranking system[,]" "expect[s] [Drivers] to follow the GPS" navigation provided to them, and "requires that Drivers respond to Riders' ride requests within a timeframe that is acceptable to" defendant.  *Id.* ¶¶ 14–18.  As to pricing, defendant's website allegedly states that by allowing drivers to "set their own rates and get 100% of the fare," riders "get more affordable rides from drivers they trust," *id.* ¶ 12, and highlights in advertising that "[r]iders using [its services] pay 20% less on average compared to Uber or Lyft," *id.* ¶ 19.  As to insurance, defendant's website allegedly states that it "does not currently provide insurance to drivers" and "suggest[s]" that drivers "purchase additional coverage" if they believe "existing coverage will [not] properly cover" them.  *Id.* ¶ 44.

On August 6, 2022, plaintiff used defendant's app to request a ride, and a driver picked her up as requested.  Am. Compl. ¶¶ 54–56.  As the driver approached the intersection of South Dakota Avenue and Riggs Road, NE, in Washington, D.C., at approximately 1:20 PM, the driver "attempted to make a left turn onto Riggs Road" and "collided with the concrete median,"

propelling the car over the median and "knocking [plaintiff] about the interior of the vehicle." *Id.*

¶¶ 56–60.  Plaintiff alleges that she "suffered injuries to her neck and back; and has suffered and

continues to suffer extreme physical and emotional pain, suffering, and anguish, as well as other

damages." *Id.* ¶ 61.  She further alleges that, at the time of the crash, neither defendant (on behalf

of the driver) nor the driver himself "maintain[ed] a primary automobile liability insurance policy

that provided coverage of at least $1 million per occurrence that covered [the driver] when he was

working as an Empower Driver," *id.* ¶¶ 62–63.

### C.    Procedural Background

Plaintiff sued defendant, on December 7, 2022, individually and on behalf of all others

similarly situated who, through defendant's app, have "booked and taken rides beginning or ending

in the District of Columbia during the time defendant has operated here."  *See* Compl. ECF, No.

1; Am. Compl. ¶¶ 64–65.[1]  She alleges, in a single count, that defendant violated multiple

provisions of the CPPA that amount to unfair or deceptive trade practices, by representing (1) "that

it is a rideshare company . . . authorized to operate in the District of Columbia" and thereby

misleading plaintiff "to believe that Defendant Empower is in compliance with the District of

Columbia's consumer-protection rideshare laws," and (2) that defendant "can provide rideshare

rides more cheaply than Uber of Lyft . . . but not explaining that it does so by violating its legal

duties," thereby misleading plaintiff "concerning the reason for its price in comparison to its

competitors' prices."  Am. Compl. ¶¶ 73–74 (citing D.C. CODE § 28-3904(a), (b), (e), (f), (f-1),

(h), and (j)).

---

[1]     Less than three months after filing the original complaint, plaintiff sought leave to file the operative Amended
Complaint, which motion was granted, *see* Minute Order (March 1, 2023), over defendant's objection that plaintiff
should be sanctioned with an award to defendant of "fees and costs associated with having to challenge the
demonstrable falsity of Plaintiff's [original] Complaint," Def.'s Resp. Pl.'s Mot. Amend Compl. at 4, ECF No. 11,
because, *inter alia*, "[a]n Empower software subscriber cannot complete the subscription process without providing
proof of automobile insurance and authorizing a robust background check performed by a third-party vendor[,]" *id*. at
3.

Plaintiff further alleges direct violations of the VHIAA's insurance and background-check provisions, which violations plaintiff alleges amount to *per se* violations of the CPPA.   Am. Compl. ¶¶ 75–82.   In particular, plaintiff alleges, first, that as of the date of the accident on August 6, 2022, and the filing of the Amended Complaint on March 1, 2023, defendant did not extend to its D.C. drivers a "primary automobile liability insurance policy that provides coverage of at least $1 million per occurrence" or "explicitly verify that its drivers themselves maintain the required coverage," notwithstanding VHIAA's insurance carriage requirement, *see* D.C. CODE § 50-301.29c(a), (b), (d).   Am. Compl. ¶¶ 79–80.   Second, that as of those same dates, defendant allegedly did "not disclose the insurance requirements set forth in" the VHIAA," *see* D.C. CODE § 50-301.29c(h).   Am. Compl. ¶ 77–78.   Finally, again as of those same dates, defendant allegedly failed to "retain an accredited third-party to conduct a background check on" its D.C. drivers, *see* D.C. CODE §§ 50-301.29b(b), 50-301.29a(6).   Am. Compl. ¶¶ 81–82.

Plaintiff, on behalf of herself and the putative class, seeks damages in the amount of $1,500 per ride booked in violation of the CPPA; attorney's fees and costs; punitive damages in the amount of $25 million or ten percent of defendant's net value, whichever is higher; an injunction against defendant's "continuing use of its unlawful trade practices in the District of Columbia"; "[r]estoration to each consumer of all money acquired through the unlawful trade practices (*i.e.*, fares)"; and "[a]ny other relief the Court deems proper."   Am. Compl. at 19–20.

Defendant responded to the Amended Complaint by filing the pending motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).   *See generally* Def.'s Mot. With briefing completed, this motion is now ripe for resolution.   *See* Pl.'s Opp'n Def.'s Mot.

Dismiss ("Pl.'s Opp'n"), ECF No. 23; Def.'s Reply Supp. Mot. Dismiss ("Def.'s Reply"), ECF No. 25.[2]

## II.    LEGAL STANDARD

Federal courts' "authority under the Constitution is limited to resolving 'Cases' or 'Controversies[,]' Art. III, § 2." *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023); *see also Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'") (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). The doctrine of Article III standing is "an essential and unchanging part of [this] case-or-controversy requirement." *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over the claim at issue. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan*, 504 U.S. at 561). When considering a motion to dismiss under Rule 12(b)(1), the court must determine jurisdictional questions by accepting as true all uncontroverted material factual allegations contained in the complaint and "constru[ing] the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged." *Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 281 (D.C. Cir. 2022) (second alteration in original) (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)). The court may also, "[a]s necessary, [] cull additional facts from other parts of the record." *West v. Lynch*, 845 F.3d 1228, 1231 (D.C. Cir. 2017) (citing *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (in deciding subject matter

---

2    Also pending is plaintiff's motion for class action certification, *see* Pl.'s Mot. Class Action Certification, ECF No. 19, which is denied as moot, given dismissal of plaintiff's Amended Complaint for lack of subject matter jurisdiction.

jurisdiction, courts may "consider[] facts developed in the record beyond the complaint")).  Absent subject-matter jurisdiction over a case, the court must dismiss it.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004); Fed. R. Civ. P. 12(h)(3)).

## III.   DISCUSSION

Defendant raises two grounds for dismissal, arguing, first, that subject matter jurisdiction is lacking because plaintiff fails to allege that she suffered a concrete injury traceable to defendant's alleged violations under the CPPA, Def.'s Mem. at 9–13; and, second, in the alternative, that plaintiff "fails to state a claim that [defendant] has ever stated anything misleading," *id*. at 3, 13–18.  District courts should be assured of their jurisdiction before considering the merits and thus the jurisdictional issue is addressed first.  *See Hancock v. Urb. Outfitters, Inc.*, 830 F.3d 511, 513 (D.C. Cir. 2016) ("The district court erred at the outset when it bypassed the jurisdictional question of [plaintiffs'] standing and dove into the merits of this case. In doing so, the district court stepped where the Constitution forbade it to tread.").

For the reasons outlined below, plaintiff lacks Article III standing to raise her CPPA claim, which is accordingly dismissed.

### A.   Standing Prerequisites

To establish Article III standing, plaintiff must plead and, ultimately, prove three elements: (1) that plaintiff suffered an "injury in fact" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical[,]" *Lujan,* 504 U.S. at 560 (quotation marks and citation omitted); (2) that plaintiff's injury must be "fairly [] trace[able]" to the challenged action of the defendant," meaning that "there must be a causal connection between the injury and the conduct complained of," *id.* (quotation marks and citation omitted); and (3) that it must be "likely,

as opposed to merely speculative, that the injury will be redressed by a favorable decision[,]" *id.* (quotation marks and citation omitted); *see also Brown*, 600 U.S. at 561; *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016).   "If a dispute is not a proper case or controversy, the courts have no business deciding it [] or expounding the law in the course of doing so." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 438 (2017) (quoting *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 341 (2006)).

The D.C. Circuit has explained that causation and redressability "are closely related" like "two sides of a . . . coin," *Dynalantic Corp. v. Dep't of Defense*, 115 F.3d 1012, 1017 (D.C. Cir. 1997), but nonetheless "the two concepts are distinct: causation focuses on the 'connection between the assertedly unlawful conduct and the alleged injury' whereas redressability focuses on the 'connection between the alleged injury and the judicial relief requested,'" *West*, 845 F.3d at 1235–36 (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). A plaintiff, as here, claiming violation of a statute must sufficiently allege facts showing that the claimed violation was causally connected to an injury that "affect[ed] the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (quotation marks and citation omitted).   Thus, as this Court has previously held, "[a] plaintiff pursuing a claim under the CPPA may not proceed based solely on the fact of a violation of the statute and must establish injury-in-fact." *Krukas v. AARP, Inc.*, No. 18-cv-1124, 2021 WL 5083443, at *12 (D.D.C. Nov. 2, 2021), *appeal dismissed*, No. 21-7136, 2022 WL 4485902 (D.C. Cir. Sept. 22, 2022) (citations omitted); *see also Hancock*, 830 F.3d at 514 (holding that CPPA plaintiffs lacked standing where they failed to allege "any cognizable injury" resulting from an alleged CPPA violation); *Silvious v. Snapple Beverage Corp.*, 793 F. Supp. 2d 414, 417 (D.D.C. 2011) (collecting cases for the proposition that "a lawsuit under the CPPA does not relieve a plaintiff of the requirement to show a concrete injury-in-fact to himself"). Moreover, merely

alleging that a plaintiff suffered a palpable injury in the form of physical and/or pecuniary harm, is insufficient to satisfy the standing requirement, unless the alleged injury is plausibly alleged to be causally connected to the legal claim asserted. *See, e.g., Beyond Pesticides v. Dr. Pepper Snapple Grp., Inc.*, No. 17-cv-1431, 2019 WL 2744685, at *1–2 (D.D.C. July 1, 2019) (dismissing CPPA suit alleging marketing misrepresentation by "natural" foods producer where plaintiff "never alleges it relied on the challenged labels" or otherwise "shows it or a member suffered an actual injury").

### B.    Plaintiff's Allegations Fail To Establish Standing

Plaintiff asserts violations of the CPPA premised on two categories of alleged misconduct: (1) defendant's alleged misrepresentations as to its compliance with the VHIAA's insurance and background-check provisions, and (2) defendant's alleged violations of those VHIAA provisions, which violations plaintiff asserts amount to unlawful trade practices under the CPPA. While the Amended Complaint is replete with allegations regarding defendant's statements on its website to bolster plaintiff's claim of CPPA and VHIAA violations, *see* Am. Compl. ¶¶ 12, 19, 32, 39, 40, 44, 47, nowhere does plaintiff allege that she reviewed, let alone relied, on these statements before requesting a driver using defendant's app. In addition, while plaintiff claims, in a single paragraph, that "*[a]s a result of the crash*, [she] "suffered injuries to" various body parts, "extreme physical and emotional pain . . . as well as other damages," Am. Compl. ¶ 61 (emphasis supplied), and further alleges that neither defendant nor the driver carried the VHIAA's requisite level of insurance, the Amended Complaint is notably silent as to any insurance deficiency failing to make her whole or that the status of the driver's background investigation contributed in any way to her injuries. These gaps in her allegations are fatal. Put simply, plaintiff has failed to allege that she

suffered any concrete injury that is traceable or in any way connected to either category of alleged violation of the CPPA.  Each category of claimed misrepresentations will be addressed in turn.

Plaintiff's CPPA claim premised on defendant's alleged misrepresentations alleges that, by representing itself as a rideshare company authorized to operate in the District, defendant misled plaintiff (and those similarly situated) to believe that defendant complied with the VHIAA's requirements, in violation of various CPPA provisions, including those prohibiting: the representation that goods, services, or persons have qualities they do not possess, *see* D.C. CODE § 28-3904(a)–(b); making representations or omissions, as to "a material fact," that have "a tendency to mislead," *id.* § 28-3904(e), (f), (f-1); and advertising or offering goods or services without intent to sell, or to sell as advertised or offered, *id.* § 28-3904(h).  Am. Compl. ¶ 73.[3] Plaintiff further asserts that defendant misled consumers as to why rides on its app were cheaper than on its competitors' apps, by not explaining that the difference resulted from defendant's alleged VHIAA noncompliance, in violation of the CPPA's provision prohibiting false or misleading representations of fact concerning "price reductions" or price comparisons, D.C. CODE § 28-3904(j).  Am. Compl. ¶ 74.

As noted, plaintiff has not alleged, however, that she was misled by any of defendant's alleged misrepresentations.  Although the CPPA prohibits any "unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby," D.C. CODE § 28-3904, plaintiff cannot bring her suit in federal court to enforce her claim absent an injury-in-fact

---

[3]     During the pendency of this matter, defendant has denied that it is "a private vehicle-for-hire company subject to licensure and regulation under D.C. law," Def.'s Mem. at 9 n.4; Def.'s Resp. Pl.'s Mot. Amend Compl. at 2, despite DFHV's order concluding the opposite, *see* Def.'s Mem. at 9 n.4 (citing defendant's pending petition for review of administrative decision affirming DFHV's cease and desist order, in *Yazam Inc. d/b/a Empower v. D.C. Dep't For-Hire Vehicles,* No. 21-AA-751 (D.C. filed Oct. 29, 2021)); Pl.'s Opp'n, Ex. 4, D.C. Off. Admin. Hearings Order Denying Yazam, Inc.'s Mot. for Reconsideration at 1 (Oct. 1, 2021), ECF No. 22-4 (denying reconsideration of final order affirming DFHV cease and desist order that defendant "immediately cease operations . . . due to [defendant's] failure to register" as a private vehicle-for-hire company).  For purposes of resolving this motion, plaintiff's allegation that defendant is subject to the VHIAA, Am. Compl. ¶¶ 1, 9, is assumed to be true.

traceable to the claimed statutory violation. *See Spokeo*, 578 U.S. at 339 ("Injury in fact is a constitutional requirement, and . . . 'Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997))).  Here, plaintiff has not claimed that she would have eschewed booking a ride through defendant's app on August 6, 2022, the date of the accident, had she known that defendant was not compliant with the VHIAA's insurance and background-check provisions.   Put another way, plaintiff has not shown that defendant's alleged misrepresentations are a but-for cause of her injuries, because she has not claimed that she would not have entered the vehicle had she known of defendant's VHIAA noncompliance.[4]  This flunks the standing test. *See, e.g.*, *Lillard & Lillard, P.C. v. Blue Cross & Blue Shield Ass'n*, 971 F. Supp. 2d 116, 119 (D.D.C. 2013) (dismissing law firm's CPPA claims against health insurer and collection agencies regarding denial of employee's medical claims and collection efforts, where the only alleged injuries "were allegedly suffered by [the employee]" and law firm "does not allege that it has suffered any other actual injuries, financial or otherwise, *as a result of* defendants' alleged conduct" (emphasis supplied)); *Little v. SunTrust Bank*, 204 A.3d 1272, 1273–75 (D.C. 2019) (vacating grant of summary judgment on family's CPPA counterclaim and finding family lacked standing because relief family sought for reimbursement of attorney's fees was not "fairly

---

[4]     Although plaintiff contends, in opposition, that she "was misled in ways that violate the CPPA" and "would not have gotten into the Empower vehicle had she not been misled by Empower," Pl.'s Opp'n at 17, 20, defendant is correct that plaintiff cannot amend her complaint by opposition, *see Schmidt v. United States*, 749 F.3d 1064, 1069 (D.C. Cir. 2014); Def.'s Reply at 3–4 (citing *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014) ("It is well settled law that a plaintiff cannot amend his or her complaint by the briefs in opposition to a motion to dismiss.")).
        This fatal gap in plaintiff's allegations may be due to an inability, in good faith, to assert this allegation if she continued to book rides through defendant's app even after being made aware of defendant's alleged misrepresentations about its compliance with the VHIAA's insurance and background check provisions, as defendant asserts in reply, supported by documentation.  Def.'s Reply at 1 (stating that plaintiff "has booked at least 66 rides using Empower's software since she filed this lawsuit" (emphasis omitted)); Def.'s Reply, Decl. of Matthew M. Madden, Ex. A, Alicia Woodford Ride History, ECF No. 25-2.

traceable" to any misrepresentation by defendant, and family alleged no other concrete injury "flowing from any alleged misrepresentations made by [defendant]"); *Hemby v. Biotab Nutraceuticals*, No. 2014-CA-190, 2014 D.C. Super. LEXIS 28, at *12–13 (D.C. Super. Ct. Sept. 10, 2014) (dismissing CPPA claim for lack of standing, explaining "[plaintiff] does not assert that [he] relied on the defendants' allegedly false and deceptive marketing claims when purchasing the defendants' product" and "[i]n the absence of any such assertion, [plaintiff] cannot establish that any injury he sustained from the purchase of that product was 'fairly traceable to the challenged action[s] of the defendants'" (quoting *Grayson v. AT&T Corp.*, 15 A.3d 219, 246–50 (D.C. 2011))).

Plaintiff likewise fails to allege an actual injury traceable to her CPPA claims premised on defendant's alleged violations of the VHIAA's insurance coverage and background-check provisions.[5] This category of misrepresentations is predicated on allegations that defendant failed (1) to "provide the insurance required by" the VHIAA to its D.C. drivers and to "verify that Empower Drivers maintained the required insurance coverage," in violation of the D.C. CODE § 50-301.29c(a), (b), (d), *see* Am. Compl. ¶ 80; (2) to "disclose the insurance requirements set forth in" the VHIAA, in violation of D.C. CODE § 50-301.29c(h), *see* Am. Compl. ¶ 77; and (3) to "conduct of all its Drivers the background checks required by" the VHIAA, in violation of D.C. CODE §§ 50-301.29a(6), 50-301.29b(b), 50-301.29b(c), *see* Am. Compl. ¶ 82. Yet, again, plaintiff has not claimed that she was not compensated for her injuries because defendant and the driver

---

[5]       Defendant argues that a violation of the VHIAA does not constitute an unlawful trade practice enforceable by plaintiff under the CPPA, because "the violation of laws not listed in the [CPPA] (and which do not convey their own private right of action)" cannot "give rise to per se claims under the [CPPA]." Def.'s Mem. at 17 (citing *Ihebereme v. Cap. One, N.A.*, 933 F. Supp. 2d 86, 109 (D.D.C. 2013), *aff'd*, 573 F. App'x 2 (D.C. Cir. 2014)). To be sure, the VHIAA appears neither to confer a private right of action nor is enumerated in the CPPA as a statute the "violat[ion] [of] any provision" of which constitutes an unlawful trade practice, D.C. CODE § 28-3904, but the issue whether the CPPA confers on plaintiff a right to enforce defendant's alleged violations of the VHIAA is a merits question that cannot be addressed here given that subject matter jurisdiction is lacking, *see Hancock*, 830 F.3d at 513.

lacked VHIAA-compliant insurance coverage.[6]  Nor has she alleged that, had defendant conducted an adequate background check under the VHIAA, the driver would have been disqualified from providing rides through defendant's app and plaintiff would not, therefore, have booked a ride with the driver on August 6, 2022.  *See* Def.'s Mem. at 11.

In short, plaintiff cannot meet the "'irreducible constitutional minimum' of standing" by alleging merely that defendant violated the CCPA by making misrepresentations and by failing to comply with the VHIAA's provisions without also alleging a concrete injury resulting from, or fairly traceable to, such alleged misrepresentations and noncompliance.  *Spokeo*, 578 U.S. at 338 (quoting *Lujan*, 504 U.S. at 560).

This conclusion is firmly supported by caselaw addressing alleged CPPA violations. *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, is particularly instructive.  In that case, plaintiffs brought a class action alleging violations of the CPPA and D.C.'s Use of Consumer Identification Information Act, D.C. CODE § 47–3151 *et seq.*, which provides that "no person shall, as a condition of accepting a credit card as payment for a sale of goods or services, request or record the address or telephone number of a credit card holder on the credit card transaction form," *id.* § 47-3153. Plaintiffs claimed that when they made a credit card purchase at the defendant's store, the cashier asked for their zip codes and "entered it into the store's point of sale register, rather than into the credit card machine."  *Hancock*, 830 F.3d at 512.  The D.C. Circuit held the complaint could not "get out of the starting gate" because plaintiffs failed to allege that they "suffered any cognizable injury as a result of the zip code disclosures."  *Id.* at 514.  Indeed, the plaintiffs' "naked assertion that a zip code was requested and recorded without any concrete consequence" was divorced from

---

[6]    Plaintiff, in opposition, asserts that she "did make a claim against her Empower driver's auto insurance" that was denied, and attaches a letter purporting to show the denial of such claim by the driver's insurance carrier.  *See* Pl.'s Opp'n at 9 (citing Pl.'s Opp'n, Ex. 6, Liberty Mutual Claim Denial Ltr., ECF No. 23-6).  As noted, *supra* n.4, plaintiff cannot replead her complaint by opposition.  *See Schmidt*, 749 F.3d at 1069.

any real harm, such as an "invasion of privacy, increased risk of fraud or identity theft, or pecuniary or emotional injury."  *Id.*   In short, the plaintiffs could not satisfy Article III's injury-in-fact requirement.  *Id.*; *see also Wheeler v. Panini Am., Inc.*, No. 22-cv-00763, 2022 WL 17039208, at *7 (D.D.C. Nov. 17, 2022) (holding that "defendant's failure to include . . . instructions on the outside of the trading card box [] have [not] caused plaintiff 'a harm traditionally recognized as providing a basis for a lawsuit in American courts.'" (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2213 (2021))).

Plaintiff's "injury" here is no different from those of plaintiffs in *Hancock*.  Just as the mere collection and entry of zip codes into a store's point-of-sale register in *Hancock* could not manifest an Article III injury-in-fact, here, defendant's alleged misrepresentations about its compliance with the VHIAA's insurance and background-check provisions and its violations of such provisions, absent any allegation that plaintiff was actually misled or that she suffered injuries due to being misled by defendant's alleged VHIAA violations, do not amount to an injury-in-fact from the claimed statutory violation.  *See TransUnion*, 141 S. Ct. at 2210, 2113–14 (concluding that certain class members asserting Fair Credit Reporting Act claims lack standing, because mere "formatting error[s]" and the "presence of an inaccuracy in an internal credit file . . . [that] is not disclosed to a third party" cause "no concrete harm").  Consequently, plaintiff here, as in *Hancock*, suffered "bare procedural violations" of D.C. law "divorced from any concrete harm." *TransUnion*, 141 S. Ct. at 2213 (quoting *Spokeo*, 578 U.S. at 341).

Plaintiff's reliance on *Mann v. Bahi*, 251 F. Supp. 3d 112 (D.D.C. 2017), *see* Pl.'s Opp'n at 16–17, is misplaced, since that case actually supports dismissing plaintiff's claim for lack of standing.  In *Mann*, plaintiff was found to have standing to bring his CPPA claim against the defendant based on allegations that he would not have obtained defendant's services had

defendant's alleged misrepresentations and omissions been known.  *See* 251 F. Supp. 3d at 119 (observing that plaintiff had "received care from a merchant whose services he would not have otherwise received" had plaintiff's son, who "was acting on [plaintiff's] behalf . . . not been misled," and that plaintiff further claims he "suffered additional injury in the form of allegedly sub-par care provided by the nurses who[m] [defendant] referred").  The *Mann* plaintiff's injury was not the bare procedural violation of the CPPA, but rather the fact that defendant's services were purchased in reliance on defendant's alleged misrepresentations and plaintiff thereby suffered harm.  By contrast, plaintiff here does not allege that she was misled or that she suffered any harm as a result of any reliance on the allegedly misleading information.  *Mann*, 251 F. Supp. 3d at 119 ("Thus, if [the plaintiff] had only alleged that [the defendant] violated the CPPA without also alleging that he was misled or that he suffered any harm, that would not be sufficient." (citing *Hancock*, 830 F.3d at 514)).

## IV.  CONCLUSION

For the reasons stated above, plaintiff's Amended Complaint is dismissed for lack of subject matter jurisdiction and plaintiff's motion for class certification is denied as moot.

An order consistent with this Memorandum Opinion will be filed contemporaneously.

Date:  November 21, 2023

_____
**BERYL A. HOWELL**
United States District Judge

16